UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| EQUIPMENT ACQUISITION RESOURCES, INC. | ) ) | Case No. 09 B 39937 |
| | ) | Hon. Susan Pierson Sonderby |
| Debtor. | ) | |
| _____ | ) ) ) | |
| WILLIAM A. BRANDT, JR., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc., | ) ) ) | Adv. No. 11-02201 |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SUNTRUST LEASING CORPORATION | ) ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

William A Brandt, Jr., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc. ("**EAR**"), by his attorneys, Diamond McCarthy LLP, brings this adversary proceeding against Suntrust Leasing Corporation ("**Suntrust**" or "**Defendant**").

## INTRODUCTION

1. This suit seeks the recovery of approximately $1.3 million that was fraudulently transferred from EAR to Suntrust. These transfers were made in furtherance of Sheldon Player's ("**Player**") fraudulent lease scheme which caused the loss of tens of millions of dollars.

2. After EAR began to experience financial difficulties in late 2009, EAR employed turnaround specialists and restructuring counsel to assist the company. During the rehabilitation efforts, it became clear that EAR had been looted and artificially and detrimentally kept out of

bankruptcy through a fraudulent schemes relating to equipment financing and leasing. As a result of the issues at EAR, Brandt was appointed as Chief Restructuring Officer to replace the then current directors and officers. Brandt filed a voluntary bankruptcy petition on behalf of EAR on October 23, 2009.

3. Prior to EAR's bankruptcy filing, Suntrust entered into leasing agreements with EAR related to certain equipment. Under the terms of the agreements, EAR made monthly payments to Suntrust from the inception of the agreements through at least August 2009. The funds transferred to Suntrust were a part of and furthered Player's scheme, and therefore, served to hinder, delay, and defraud EAR's creditors.

4. Brandt requests that this Court grant relief that will return the funds which were transferred to Suntrust as part of Player's scheme. Specifically, Plaintiff seeks: (a) the avoidance and recovery of $1,263,559.30 in fraudulent transfers under 11 U.S.C. § 548 or 740 ILCS 160/5; or in the alternative, (b) avoidance and recovery of $17,280.48 in transfers occurring within the preference period set forth in 11 U.S.C. § 547.

## PARTIES, JURISDICTION & VENUE

### I. Nature of the Proceeding

5. This is an adversary proceeding, pursuant to Fed. R. Bankr. P. 7001, which relates to the Chapter 11 proceeding captioned *In re Equipment Acquisition Resources, Inc.*, Case No. 09-B-39937 (Bankr. N.D. Ill., Eastern Div.).

### II. Plaintiff

6. On October 23, 2009, EAR filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in this Court (the "**Petition Date**"). This Court confirmed

the Plan on July 15, 2010 [DE #322]. Pursuant to the terms of the Plan, EAR executed the Plan Administrator Agreement, appointing Brandt as Plan Administrator.

7. The Plan expressly retained the EAR's Litigation Claims, as defined in Plan ¶1.43. Under the terms of the Plan and the Plan Administrator Agreement, Brandt has the responsibility and right to pursue the Litigation Claims on behalf of the Estate, including EAR's claims against Suntrust.

### III. Defendant

8. Defendant Suntrust is a corporation formed under the laws of the state of Virginia. Defendant may be cited to appear through its registered agent Illinois Corporation Service at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

### IV. Jurisdiction and Venue

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334 in that this action arises in, arises under, and/or relates to EAR's bankruptcy proceeding.

10. This action is, at least in part, a core proceeding under 28 U.S.C. §§ 157. In the alternative, Plaintiff consents to entry of a final order or judgment by this Court.

11. This Court has venue over this proceeding pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

### I. EAR's Formation and Operations

12. EAR was incorporated in 1997 under the laws of Illinois. Under its business model, EAR was designed to operate as a refurbisher of special machinery, a manufacturer of high-end technology parts, and a process developer for the manufacturing of high-technology parts. The bulk of EAR's stated revenue was derived from the refurbishing and selling high-tech machinery. EAR was set up to purchase high-tech equipment near the end of its life-cycle at low prices relative to the cost of a new unit, and then refurbish the equipment for sale to end-users at

substantial gross margins using a propriety process. Eventually, EAR's apparent success came to an end, and Player's systematic abuse of EAR and his other wrongful conduct was revealed. Investigations by Brandt uncovered that Player used EAR to support a Ponzi-like scheme that Player implemented for his personal enrichment.

### II.     Sheldon Player's Wrongful Conduct at EAR

13.     Player systematically and repeatedly caused EAR to enter into unnecessary and harmful financing and lease agreements related to over-valued machinery. As part of this fraudulent scheme, Player caused EAR to enter into financing and financing-type lease agreements with certain entities (the "**Financial Entities**") related to equipment that was allegedly owned by Machine Tools Direct, Inc. ("**MTD**"). However, MTD was a mere straw-man in Player's scheme.

14.     Many, if not all, of the sale invoices from MTD sent to the Financial Entities grossly overstated the value of the underlying equipment. Moreover, MTD "purchased" the underlying equipment from EAR mere days before MTD sold the equipment to either EAR or the Financing Entity. In those instances, Player purportedly caused EAR to transfer title to the underlying equipment to MTD. MTD then sold that equipment to EAR (or the Financial Entity in the case of a lease) at an inflated purchase price. As a result of this scheme, Player caused EAR to lease equipment at a cost far in excess of its actual value.

15.     At first glance, the transactions might appear beneficial to EAR due to increased sales revenue. However, EAR could not and did not benefit from these circular transfers since EAR paid far more for the equipment under the financing or lease agreements than it ever received via the sale to MTD. Moreover, Player's defalcations further prevented EAR from having the funds necessary to repay the related financing or lease obligations, thus requiring

EAR to enter into an increasing number of these transactions in order to have sufficient funds to repay its current obligations. In effect, Player's misconduct amounted to a Ponzi-scheme where funds from later Financing Entities were used to repay EAR's obligations under earlier financing and lease obligations.

16. In 2009, after receiving numerous notices of default from its creditors, EAR sought the assistance of outside counsel and turn-around specialists in order to help in the company's rehabilitation. After some investigation, EAR's outside counsel and consultants discovered evidence of potential fraud in EAR's leasing activity.

17. Once it became apparent that Player had engaged in potentially fraudulent activity, EAR's officers and directors resigned from their positions at EAR on October 8, 2009. With the resignation of the former officers and directors, Donna Malone and Mark Anstett, Player too lost any power to influence or control EAR's operations. Brandt was elected as sole member of the board of directors and as the Chief Restructuring Officer ("**CRO**") subsequent to the departure of Malone, Anstett, and Player.

18. The CRO was vested with the power to assume full control of all operations of EAR and all the powers and duties of the President, Chief Executive, and Treasurer of EAR. Pursuant to these powers, the CRO filed EAR's voluntary Chapter 11 bankruptcy petition to manage EAR's assets for the benefit of all creditors. Pursuant to the Plan, Brandt was appointed as the Plan Administrator for EAR.

### III.    Suntrust's Lease Agreements with EAR

19. Suntrust entered into at least three leases with EAR (the "**Leases**"). The Leases were related to certain equipment and were made on or about the following dates: (a) September 7, 2005; (b) March 17, 2006; and (c) January 3, 2007. Under the terms of the Leases, EAR was

required to make monthly payments to Suntrust with respect to the equipment which was identified in the Leases.

20. Upon information and belief, Player caused EAR to agree to enter into the Leases because doing so furthered his fraudulent scheme. The transactions with Suntrust are of the type of financing arrangements that Player used to perpetuate his wrongful scheme. As a result of the misconduct, EAR's creditors that had financing and leases which were part of Player's scheme have been unable to identify what, if any, equipment that was previously located at EAR's facilities was subject to a valid security agreement or lease. Because the transfers made to Suntrust were part of Player's fraudulent scheme, the transfers that EAR made to Suntrust in satisfaction of the Leases were made with the actual intent to hinder, delay, and defraud EAR's remaining creditors.

## **CLAIMS FOR RELIEF**

### COUNT I – FRAUDULENT TRANSFER
### UNDER 11 U.S.C. § 548(a)(1)(A)

21. The Plaintiff re-alleges and fully incorporates the allegations pleaded in the paragraphs above as if fully set forth herein.

22. In accordance with the requirements of the Leases, EAR made transfers to Suntrust from its bank account(s) totaling $851,520.64 from at least December 2007 through August 2009(the "**Lease Transfers**"). The transfers are more fully described in Exhibit A, which is attached hereto.

23. The Lease Transfers were made within two years of the Petition Date.

24. The Lease Transfers were made as a part of the fraudulent scheme perpetrated at EAR by Sheldon Player. Thus, the Lease Transfers were made with the actual intent to hinder,

delay, or defraud entities to which EAR was or became indebted to on or after the date of the transfer.

25. Pursuant to 11 U.S.C. § 548(a)(1)(A), the plaintiff is entitled to judgment avoiding the Lease Transfers.

### COUNT II – FRAUDULENT TRANSFER
### UNDER 740 ILCS 160/5(a)(1)

26. The Plaintiff re-alleges and fully incorporates the allegations pleaded in the paragraphs above as if fully set forth herein.

27. In accordance with the requirements of the Leases, EAR made the Lease Transfers as described more fully in Exhibit A. In addition to the Lease Transfers totaling $851,520.64, EAR made additional transfers to Suntrust totaling at least $412,038.66 under the terms of the Leases from its bank account(s) prior to November 2007. These additional transfers are more fully described in Exhibit B (the "**Additional Lease Transfers**"), which is attached hereto.

28. The Lease Transfers and the Additional Lease Transfers were made within four years of the Petition Date.

29. The Lease Transfers and the Additional Lease Transfers were made as a part of the fraudulent scheme at EAR perpetrated by Sheldon Player. Thus, the Lease Transfers and the Additional Lease Transfers were made with the actual intent to hinder, delay, or defraud entities to which EAR was or became indebted to on or after the date of the transfer.

30. Pursuant to 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5(a)(1), the Plaintiff is entitled to judgment avoiding the Lease Transfers and the Additional Lease Transfers.

## COUNT III – PREFERENCE
## UNDER 11 U.S.C. § 547

31. The Plaintiff re-alleges and fully incorporates the allegations pleaded in the paragraphs above as if fully set forth herein.

32. In the 90 days immediately preceding the Petition Date, EAR transferred to Suntrust the sum of $17,280.48 (the "**Preferential Transfer**"). Specifically, Suntrust received the transfer from EAR's bank account at Norstates Bank on or about August 7, 2009.

33. The Preferential Transfer was made to or for the benefit of Suntrust, a creditor of EAR.

34. The Preferential Transfer was made for or on account of an antecedent debt owed by EAR before the Preferential Transfer was made.

35. The Preferential Transfer was made while EAR was insolvent.

36. The Preferential Transfer was made on or within 90 days before the Petition Date.

37. The Preferential Transfer enabled Suntrust to receive more than it would have received if the case were a case under Chapter 7 of title 11 of the United States Bankruptcy Code (the "**Code**"), the Preferential Transfer had not been made, and the Defendant received payment on such debt to the extent provided by the provisions of the Code.

38. Pursuant to 11 U.S.C. § 547, the Plaintiff is entitled to judgment avoiding the Preferential Transfer.

## COUNT IV – RECOVERY OF THE VALUE OF THE
## AVOIDED TRANSFERS UNDER 11 U.S.C. § 550

39. The Plaintiff re-alleges and fully incorporates the allegations pleaded in the paragraphs above as if fully set forth herein.

40. For the reasons set forth above, Plaintiff is entitled to avoid the Lease Transfers the Additional Lease Transfers, and the Preferential Transfer.

41. Suntrust was the initial transferee of the Lease Transfers the Additional Lease Transfers, and the Preferential Transfer as Suntrust received the funds transferred from EAR.

42. Pursuant to 11 U.S.C. § 550, Plaintiff is entitled to recover the value of the Lease Transfers the Additional Lease Transfers, and the Preferential Transfer from Suntrust.

### COUNT V – DISALLOWANCE OF CLAIM
### UNDER 11 U.S.C. § 502(d)

43. The Plaintiff re-alleges and fully incorporates the allegations pleaded in the paragraphs above as if fully set forth herein.

44. The Lease Transfers and Additional Lease Transfers are avoidable under 11 U.S.C. § 548 and 740 ILCS 160/5. The Preferential Transfer is avoidable under 11 U.S.C. § 547.

45. Pursuant to 11 U.S.C. § 502(d), any claims of Defendant against the Debtor must be disallowed until such time as Defendant pays the Lease Transfers, Additional Lease Transfers, and Preferential Transfer as provided in 11 U.S.C. § 502(d).

### **PRAYER**

Wherefore, Plaintiff respectfully requests that the Court enter judgment and grant it the following relief against Suntrust:

1. Entering an order of judgment avoiding the Lease Transfers under 11 U.S.C. § 548(a)(1)(A);
2. Entering an order of judgment avoiding the Lease Transfers and the Additional Lease Transfers under 740 ILCS 160/5(a)(1);
3. Entering an order of judgment avoiding the Preferential Transfer under 11 U.S.C. 547;
4. Entering an order of judgment in the amount of $1,263,559.30 in favor of the Plaintiff and against Suntrust;
5. Entering an order disallowing any payment or claim held by Defendant, to the extent on exists, pursuant to 11 U.S.C. § 502(d);

6. Prejudgment and post-judgment interest as allowed by law; and

7. All other relief to which it is entitled.

Dated: December 28, 2011

Respectfully submitted,

/s/ *Jon Maxwell Beatty*
One of the attorneys for Plaintiff
William A. Brandt, Jr., solely in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc.

Allan B. Diamond (TX Bar 05801800)
adiamond@diamondmccarthy.com
Jon Maxwell Beatty (TX Bar 24051740)
mbeatty@diamondmccarthy.com
Diamond McCarthy LLP
909 Fannin, Suite 1500
Houston, Texas 77010
Tel: (713) 333-5100
Fax: (713) 333-5199

**Exhibit A to Complaint**

*Lease Transfers*

| Date | Amount |
|---|---|
| 12/10/2007 | $ 16,148.60 |
| 1/9/2008 | $ 16,148.60 |
| 1/31/2008 | $ 17,280.48 |
| 2/11/2008 | $ 16,148.60 |
| 2/12/2008 | $ 217,500.00 |
| 3/3/2008 | $ 17,280.48 |
| 3/10/2008 | $ 16,148.60 |
| 3/31/2008 | $ 17,280.48 |
| 4/9/2008 | $ 16,148.60 |
| 5/1/2008 | $ 17,280.48 |
| 5/9/2008 | $ 16,148.60 |
| 6/2/2008 | $ 17,280.48 |
| 6/9/2008 | $ 16,148.60 |
| 6/30/2008 | $ 17,280.48 |
| 7/9/2008 | $ 16,148.60 |
| 7/31/2008 | $ 17,280.48 |
| 8/11/2008 | $ 16,148.60 |
| 9/3/2008 | $ 17,280.48 |
| 9/9/2008 | $ 16,148.60 |
| 10/1/2008 | $ 17,280.48 |
| 10/9/2008 | $ 16,148.60 |
| 10/31/2008 | $ 17,280.48 |
| 11/12/2008 | $ 16,148.60 |
| 12/2/2008 | $ 17,280.48 |
| 12/9/2008 | $ 16,148.60 |
| 1/9/2009 | $ 16,148.60 |
| 2/2/2009 | $ 17,280.48 |
| 2/10/2009 | $ 16,148.60 |
| 3/3/2009 | $ 17,280.48 |
| 3/10/2009 | $ 16,148.60 |
| 3/31/2009 | $ 17,280.48 |
| 4/9/2009 | $ 16,148.60 |
| 5/1/2009 | $ 17,280.48 |
| 5/11/2009 | $ 16,148.60 |
| 6/2/2009 | $ 17,280.48 |
| 6/9/2009 | $ 16,148.60 |
| 7/1/2009 | $ 17,280.48 |
| 7/9/2009 | $ 16,148.60 |
| 8/7/2009 | $ 17,280.48 |
| | $ 851,520.64 |

**Exhibit B to Complaint**

*Additional Lease Transfers*

| Date | Amount |
|---|---|
| 4/11/2006 | $ 16,148.60 |
| 5/9/2006 | $ 16,148.60 |
| 6/9/2006 | $ 16,148.60 |
| 7/11/2006 | $ 16,148.60 |
| 8/9/2006 | $ 16,148.60 |
| 9/11/2006 | $ 16,148.60 |
| 10/11/2006 | $ 16,148.60 |
| 11/9/2006 | $ 16,148.60 |
| 12/11/2006 | $ 16,148.60 |
| 1/31/2007 | $ 17,280.48 |
| 2/9/2007 | $ 32,297.30 |
| 4/2/2007 | $ 17,280.48 |
| 4/9/2007 | $ 16,148.60 |
| 4/30/2007 | $ 17,280.48 |
| 5/9/2007 | $ 16,148.60 |
| 5/31/2007 | $ 17,280.48 |
| 6/11/2007 | $ 16,148.60 |
| 7/5/2007 | $ 17,280.48 |
| 7/9/2007 | $ 16,148.60 |
| 7/30/2007 | $ 17,280.48 |
| 8/9/2007 | $ 16,148.60 |
| 8/31/2007 | $ 17,280.48 |
| 9/10/2007 | $ 16,148.60 |
| 9/20/2007 | $ 16,549.00 |
| | $ 412,038.66 |